# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

        Plaintiff,

        v.                                Case No. 06-CR-314

**JAMES MAYES,**

        Defendant.

## RECOMMENDATION TO THE HONORABLE LYNN ADELMAN REGARDING THE DEFENDANT'S MOTION TO SUPPRESS

On November 28, 2006, the grand jury returned a one count indictment alleging that James Mayes ("Mayes") knowingly possessed two firearms after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

On January 8, 2007, Mayes filed a motion seeking to suppress evidence seized pursuant to a search warrant issued by a Racine County Circuit Court Judge. Mayes argues that the warrant fails to establish probable cause because the affidavit fails to establish that the informant was reliable based upon the five factors set forth in United States v. Mykytiuk, 402 F.3d 773, 776 (7th Cir. 2005).

A final pretrial conference is scheduled for February 16, 2007 and a jury trial is scheduled to commence before the Honorable Lynn Adelman on February 28, 2007.

## ANALYSIS

"When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit." United States v. Peck, 317 F.3d 754, 755-756 (7th Cir. 2003) (citing United States v. Roth, 391 F.2d 507, 509 (7th Cir. 1967)). Probable cause is a fluid concept, United States v. McNeese, 901 F.2d 585, 592 (7th Cir. 1990), determined by the "totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 238 (1983). An affidavit has made a proper showing of probable cause when it sets forth facts "sufficient to induce a reasonably prudent person to believe that a search . . . will uncover evidence of a crime." McNeese, 901 F.2d at 592; Gates, 462 U.S. at 238 (probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place); United States v. Gilbert, 45 F.3d 1163, 1166 (7th Cir.1995).

On September 21, 2006, a City of Racine Police Investigator presented an affidavit in support of a search warrant. The following facts are contained in the affidavit:

On September 1, 2006, Racine police officers received a report of shots being fired. Upon investigation, a police officer located a total of four 9mm shell casings in the 700 block of 12th Street in the City of Racine. A police officer made contact with a citizen who stated that she witnessed the shooting. This citizen-witness, who is identified by name in the affidavit, reported that she was at a residence very nearby to where the shell casings were found when a black male whom she knows as "James" parked a white Plymouth Breeze with an unknown license plate just east of a residence where additional shell casings were found. The citizen-witness described James as being about thirty-years-old and stated that she knew James from having worked with him two years earlier.

Earlier on the same day of this incident, James met with the citizen-witness at the citizen-witness' workplace in an attempt to obtain the phone number of one of the citizen-witness' friends.

The citizen-witness refused to give James the phone number. After parking the Plymouth Breeze, James approached the citizen-witness and again asked for the friend's phone number. The citizen-witness again refused and James became angry. At this time, two unidentified males walked on the sidewalk across the street from James. "James accused the two of creeping up on him and was shouting at them." (Aff. ¶5.) The citizen-witness then observed James go to the Plymouth Breeze and retrieve a black handgun. The citizen-witness and everyone else around her began to run. As she ran, the citizen-witness heard about eight shots. She then saw James get into the Plymouth Breeze and speed away.

The citizen-witness was able to contact her supervisor from the business where she previously worked with James and learn that James' last name was Mayes.

Racine Police Officers were able to make contact with another resident of the 700 block of 12th Street who had previously been stopped by the police while in the company of James Mayes. This citizen again did not know James' last name but stated that he knew James to live on Ohio Street. The affidavit does not describe how this citizen was identified as potentially having information relevant to this investigation.

Without explaining the basis for his knowledge, the affiant stated that he knows "that James Mayes list [sic] his home address as 26 Ohio Street." (Aff. ¶8.) The affiant observed a white Plymouth Breeze in front of this address. The vehicle's license plate listed to a female living at a residence on Prospect Street that, according to Racine Police Department records, James Mayes previously used as his residence. The affiant then reviewed Mayes' criminal history report and learned that Mayes is a convicted murderer and known gang member.

The affiant states that based upon his experience in investigations and the execution of search warrants, it "is common for persons involved in criminal activity to use vehicles and out buildings as a method to store firearms." (Aff. ¶11.) Based upon this affidavit, a no knock search

3

warrant was issued for 26 Ohio Street, its occupants and curtilage, as well as "vehicles parked on the curtilage or street associated with the occupants of 26 Ohio Street." (Aff. ¶16.)

**Probable Cause**

> Where information from an informant is used to establish probable cause, courts should assess the informant's credibility by considering the following factors: (1) whether the informant personally observed the events, (2) the degree of detail shown in the informant's statements, (3) whether the police independently corroborated the information, (4) the interval of time between the events and application for a warrant, and (5) whether the informant appeared in person before the judicial officer who issued the warrant.

United States v. Mykytiuk, 402 F.3d 773, 776 (7th Cir. 2005) (citing United States v. Koerth, 312 F.3d 862, 866 (7th Cir. 2002); United States v. Jones, 208 F.3d 603, 609 (7th Cir. 2000)); see also United States v. Taylor, 2006 U.S. App. LEXIS 31303 (7th Cir. 2006) (citing United States v. Olson, 408 F.3d 366, 370 (7th Cir. 2005)). "None of these factors is determinative; . . . 'a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability." Peck, 317 F.3d at 756 (quoting United States v. Brack, 188 F.3d 748, 756 (7th Cir. 1999)). The court shall analyze each of these factors in turn.

The citizen-witness' information is based upon her personal observations. She observed a known subject fire a gun and flee the scene. Although the citizen-witness' statements are hearsay because she did not appear before the judge who issued the warrant, hearsay may be appropriately considered when assessing probable cause if the declarant is reliable. See United States v. Pless, 982 F.2d 1118, 1125 (7th Cir. 1992) (citing Franks v. Delaware, 438 U.S. 154, 165 (1978). There is absolutely no reason to believe that the citizen-witness not reliable. Mayes asks this court to speculate as to the possibility that the citizen-witness may have been a disgruntled former co-worker of Mayes' or may otherwise have a motive to fabricate these allegations. However, there is absolutely nothing to indicate that this was the case. Rather, the information in the affidavit

4

indicates that the citizen-witness was merely a witness to a criminal act and reported her observations to the police as society hopes any citizen would do.

Unlike the situation where police rely upon information from a confidential informant who has demonstrated his reliability throughout numerous instances of cooperation with the police, an ordinary citizen-witness' reliability cannot be demonstrated by way of an ongoing relationship with law enforcement. A citizen-witness' relationship with law enforcement is ordinarily isolated to the single criminal act she witnessed. Information from a confidential informant is ordinarily suspect given the fact that cooperation is often incentivized by monetary compensation or the hope of a more favorable disposition of the informants own criminal matters. See, e.g., United States v. Peck, 317 F.3d 754, 758 (7th Cir. 2003) ("[M]ost CIs have a bias against the defendant or something to gain from their statement."). However, such inherent suspicion does not underlie statements of ordinary citizen-witnesses. Rather, ordinarily a citizen-witnesses may, to some degree, be presumed to be reliable because such citizen-witnesses lack an obvious motive to subject himself or herself to possible criminal prosecution by being untruthful in her report to the police. See, e.g., State v. Paszek, 50 Wis. 2d 619, 630-31, 184 N.W.2d 836, 842-43 (1971).

The citizen-witness' statements were also reasonably detailed. First, she was able to describe the make, model, and color of the vehicle that she observed Mayes drive and indicate the make and model of the vehicle she observed Mayes park behind. Second, she was also able to provide a general description of Mayes. However, under these circumstances a more specific description was unnecessary because Mayes was known to the citizen-witness and the Racine Police Department.

Third, much of the information from the citizen-witness was independently corroborated. The police were able to verify that Mayes likely had access to a vehicle fitting the precise description of the one observed by the citizen-witness. The police also recovered physical evidence,

specifically shell casings, to corroborate the citizen-witness' report that shots had been fired in the area. However, there is no indication that the police corroborated the crucial fact reported by the citizen witness, that being that Mayes was the one doing the shooting. The affidavit indicates that there were many other people around when the shooting occurred but yet the affidavit does not include any information as to what these potential witnesses may have seen. Perhaps these witnesses' observations were nowhere as detailed as those of the referenced citizen-witness. Nonetheless, any measure of corroboration would have been helpful to the probable cause analysis.

Fourth, the report taken from the citizen-witness was contemporaneous with the incident. It was only the application for the search warrant that was twenty days later.

In light of the fact that the source of this information is a citizen-witness with no apparent motive to fabricate, the court believes that the information is sufficiently credible to establish probable cause. As explained above, much of the citizen-witness' information was corroborated. Although the affidavit does not contain any direct corroboration of the citizen-witness' claim that Mayes was the person who fired the shots, additional police investigation did identify that Mayes is a convicted murderer and known gang member. Such facts corroborate the citizen-witness' statements to some degree in that these facts indicate a character consistent with that described by the citizen-witness.

More troublesome is the twenty-day lapse between the citizen-witness' observations and the affidavit. There is no explanation for this delay. This creates the possibility that Mayes may have disposed of the firearm. However, this court does not believe that this possibility is sufficient to negate a finding of probable cause. See United States v. Harju, 466 F.3d 602, 608 (7th Cir. 2006) ("[U]nlike small amounts of drugs or cash, the gun was not likely to have been sold (or consumed) during [the three weeks between the confidential informant's observations and the application for the search warrant.]").

6

Mayes also argues that there was insufficient probable cause to support the search of the residence on Ohio Street. The citizen-witness observed Mayes retrieve the firearm from a Plymouth Breeze. Thus, if there was probable cause, Mayes argues there was probable cause to search only the vehicle.

The court disagrees with Mayes' argument and believes that there was sufficient probable cause to search the residence. The affidavit sufficiently established that the residence was related to Mayes and to the Plymouth Breeze. The fact that the citizen-witness observed Mayes retrieve the firearm from his vehicle bears little significance to this court. Persons regularly move items from their homes and into their vehicles and vice versa. A person may leave an item in his or her car for a time and then bring it back into a home. Firearms certainly are the types of objects that are commonly stored in residences in addition to in vehicles. In fact, given that under many circumstances it is illegal in Wisconsin for a person to have a firearm in a vehicle, it may be substantially more likely that a firearm would be ordinarily stored in a residence rather than in a vehicle. The fact that the citizen-witness happened to observe the firearm be retrieved from the vehicle certainly does not make it unreasonable that Mayes may have later moved the firearm into his residence. Certainly, if the citizen-witness had observed Mayes draw the firearm from his waistband it would be illogical to limit the police's search to only his person.

In summary, the affidavit states that a citizen observed a person she knows fire a handgun. The citizen indicated that the suspect was driving a particular make and model of vehicle and the police were able to corroborate that the suspect had access to such a vehicle. The police also recovered shell casings from the area where the citizen-witness indicated they would be likely to be found, thereby corroborating the citizen's report that a shooting occurred. The police also learned that the suspect was a convicted murderer and a known gang member. In the view of this court, these facts are sufficient to constitute probable cause to search the defendant's vehicle and

7

residence. However, even if the affidavit failed to establish probable cause, the evidence seized need not be suppressed because the police officers who obtained and executed the warrant could have reasonably believed that they had obtained a valid warrant. See United States v. Leon, 468 U.S. 897 (1984).

**Leon Good Faith Exception**

Neither Mayes nor the government discuss the applicability of the Leon good faith exception. Even if this court were to agree with Mayes that the affidavit did not establish probable cause suppression would be appropriate only if the affidavit was so lacking in probable cause that no reasonable police officer could have believed that the warrant was valid. Id. at 922.

If a police officer could have reasonably relied upon the search warrant, then evidence seized pursuant to the warrant shall not be suppressed simply because the search warrant was later determined to be defective. Id. "If a defendant is successful in establishing the invalidity of the search warrant, the burden then shifts to the Government to establish that the police relied in good faith on the judge's decision to accept the affidavit and issue the warrant." United States v. Koerth, 312 F.3d 862, 868 (7th Cir. 2002). A police officer's decision to seek a warrant is prima facie evidence of good faith. United States v. Harju, 466 F.3d 602, 607 (7th Cir. 2006); United States v. Merritt, 361 F.3d 1005, 1013 (7th Cir. 2004); Koerth, 312 F.3d at 868. Thus, the burden falls upon the defendant to rebut this prima facie case. Harju, 466 F.3d at 607.

Because the test is an objective one, it is not necessary that this court conduct an evidentiary hearing to determine whether the particular officers involved in the execution in the warrant at issue in this case did, in fact, rely upon it. The question is whether a reasonable and well-trained police officer would have believed that this warrant was valid. See Leon, 468 U.S. at 922 n.3; see also, United States v. Dickerson, 975 F.2d 1245, 1250 (7th Cir. 1992).

Police officers are not expected to be trained as lawyers and are not required review search warrants with the scrutiny demanded from a judicial officer. "Judicial officers have the responsibility to determine whether there is probable cause to issue a warrant; police officers should not be expected to question that determination." Harju, 466 F.3d at 606; see also, Illinois v. Krull, 480 U.S. 340, 349 (1987) ("It is the judicial officer's responsibility to determine whether probable cause exists to issue a warrant, and, in the ordinary case, police officers cannot be expected to question that determination."); Massachusetts v. Sheppard, 468 U.S. 981, 989-90 (1984) ("[W]e refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested."). However, "[p]olice officers in effecting searches are charged with a knowledge of well-established legal principles as well as an ability to apply the facts of a particular situation to these principles," United States v. Koerth, 312 F.3d 862, 869 (7th Cir. 2002) (quoting United States v. Brown, 832 F.2d 991, 995 (7th Cir. 1989)), and therefore cannot blindly rely upon a search warrant simply because it bears the signature of a judge.

As explained above, this court believes that the warrant was supported by probable cause. In light of the fact that a state court judge and a federal magistrate both believe that the warrant was supported by probable cause, it is the view of this court that it would not have been unreasonable for the police officers involved in this case to believe that they were acting pursuant to a valid warrant. See Harju, 466 F.3d at 611 n.5.

**IT IS THEREFORE RECOMMENDED** that the defendant's motion to suppress be **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this recommendation. Objections are to be filed in accordance with

the Eastern District of Wisconsin's electronic case filing procedures.  Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case.  Failure to file a timely objection with the district court shall result in a waiver of the party's right to appeal.

Dated at Milwaukee, Wisconsin this <u>25th</u> day of  January, 2007.

<u>s/AARON E. GOODSTEIN</u>
U.S. Magistrate Judge