# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

  v.                                                    Case No. 06-CR-314

**JAMES MAYES**
        **Defendant.**

## DECISION AND ORDER

The government charged defendant James Mayes with possessing firearms as a felon. 18 U.S.C. § 922(g). Defendant moved to suppress the firearms and other evidence seized from his residence pursuant to a search warrant, arguing that the warrant application failed to establish probable cause. The motion was referred to a magistrate judge, who recommended denial. Defendant objects, requiring me to review the matter de novo. Fed. R. Crim. P. 59(b).

## I. FACTS

On September 21, 2006, City of Racine Police Investigator Todd J. Yde applied for a warrant to search the premises at 26 Ohio Street in Racine. In his supporting affidavit, Yde indicated that, according to a police report prepared by Officer D. Funderburg, on September 1, 2006, officers responded to a complaint of shots fired in the 700 block of 12th Street in Racine, and Funderburg located several 9 mm shell casings in the area. (R. 6-2 [Yde Aff.] at 2 ¶ 2.) Officer J. Pumphrey, who also responded to the complaint, interviewed a citizen named Olivia Beard, who stated that she was in the area when the shooting occurred. She stated that a black male, approximately thirty years of age, whom she knew as "James," parked a white Plymouth Breeze behind a Pontiac Grand Prix just east of 706 12th Street. (Id. ¶ 3.) Beard

stated that James had approached her previously that day at her work place, the John Bryant Community Center, to ask for the phone number of one of her friends. She declined to give out the number. (Id. ¶ 4.)

Beard stated that after parking the Breeze, James approached her to again ask for her friend's information. When Beard again declined, James became angry. At that time, James noticed two men walking on the sidewalk across the street, accused them of creeping up on him and shouted at them. Beard stated that James went back to the Breeze and retrieved a large black handgun, and she ran to the back of the house. Beard indicated that she heard about eight shots, then saw James go back to the Breeze and speed off. (Id. ¶ 5.) Beard further informed Pumphrey that she used to work with James at the Bryant Center before he quit about two years ago. She stated that she called her supervisor and learned that James's last name was Mayes. (Id. at 3 ¶ 6.)

Pumphrey also spoke to a citizen named Anemencio Delacruz on the 700 block of 12th Street. Delacruz stated that he knew James lived on Ohio Street, but did not know his last name. Yde indicated that Delacruz and James Mayes had previously been stopped by the police together at the Captains Corner Tavern on July 29, 2006. (Id. ¶ 7.)

Yde averred that he knows James Mayes lists his home address as 26 Ohio Street. He further averred that on September 15, 2006, he observed a white Plymouth Breeze in front of 26 Ohio Street. The Breeze listed to Melanie D. Morgan of 2222 Prospect Street, and Racine Police Department records indicated that Mayes had a prior address of 2222 Prospect Street. Yde also noted that on August 30, 2006, Mayes was stopped in front of 1401 Villa Street by Racine police officers; he was at that time driving a 1983 Olds bearing a license plate listed to James Mayes at 26 Ohio Street. On September 18, another investigator saw a white Plymouth

2

Breeze in the driveway at 26 Ohio Street. (Id. ¶ 8.)

Yde averred that he ran a criminal history report on James Mayes (dob 12/19/73) and learned that Mayes had a prior murder conviction in Memphis, Tennessee and was listed as a member of the Gangster Disciples. Yde noted that Beard had told him that James Mayes told her that he used to lived in Memphis. (Id. ¶ 9.)

Yde averred that he personally viewed 26 Ohio Street and provided a description of the building. (Id. ¶ 14.) He requested that the court issue a no knock search warrant for the residence, as well any vehicles parked on the curtilage. (Id. ¶ 16.) A Racine County judge issued the warrant (id. at 1), and, according to the return, officers executing the warrant recovered a 12-gauge shotgun, .38 caliber handgun and marijuana (id. at 5).

## II. DISCUSSION

### A. Applicable Legal Standard

In ruling on a motion to suppress evidence recovered pursuant to a search warrant, the court employs a sequential two-step test. See United States v. Koerth, 312 F.3d 862, 866 (7th Cir. 2002). The court must first determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant. United States v. Lloyd, 71 F.3d 1256, 1262 (7th Cir. 1995). When, as in the present case, "the affidavit is the only evidence presented to the warrant-issuing magistrate, 'the warrant must stand or fall solely on the contents of the affidavit.'" Koerth, 312 F.3d at 866 (quoting United States v. Roth, 391 F.2d 507, 509 (7th Cir. 1967)).

Probable cause to issue a warrant exists when the warrant application alleges facts sufficient to induce a reasonably prudent person to believe that a search will uncover evidence

3

of a crime. United States v. Peck, 317 F.3d 754, 756 (7th Cir. 2003). The Supreme Court has explained that:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Illinois v. Gates, 462 U.S. 213, 238 (1983).

The reviewing court considers the application in a realistic and common sense manner in order to determine whether it alleges specific facts and circumstances that would permit the issuing magistrate to reasonably conclude that the evidence sought to be seized was associated with the crime alleged and located in the place indicated. Koerth, 312 F.3d at 866-67 (citing United States v. Spry, 190 F.3d 829, 835 (7th Cir. 1999)). Where the warrant application is supported by an informant's tip, the reviewing court considers the following factors:

> (1) whether the informant personally observed the events, (2) the degree of detail shown in the informant's statements, (3) whether the police independently corroborated the information, (4) the interval of time between the events and application for a warrant, and (5) whether the informant appeared in person before the judicial officer who issued the warrant.

United States v. Mykytiuk, 402 F.3d 773, 776 (7th Cir. 2005) (citing Koerth, 312 F.3d at 866; United States v. Jones, 208 F.3d 603, 609 (7th Cir. 2000)). No single factor is dispositive, and a deficiency in one may be compensated for by a strong showing in another or by some other indication of reliability. E.g., Peck, 317 F.3d at 756; United States v. Brack, 188 F.3d 748, 756 (7th Cir. 1999). Ultimately, the reviewing court must give the magistrate's determination of probable cause considerable weight and resolve doubtful cases in favor of upholding the warrant. United States v. Quintanilla, 218 F.3d 674, 677 (7th Cir. 2000).

4

If the court finds the warrant deficient, it must then proceed to the second step, which is to determine whether the executing police officer could "have <u>reasonably</u> <u>believed</u> that the facts set forth in the affidavit were sufficient to support a magistrate's finding of probable cause." <u>Koerth</u>, 312 F.3d at 866 (citing <u>United States v. Leon</u>, 468 U.S. 897, 920-24 (1984)). The government bears the burden of demonstrating by a preponderance of the evidence that the police relied in "good faith" on the magistrate's decision to issue the warrant. <u>Koerth</u>, 312 F.3d at 868. An officer's decision to seek a warrant is prima facie evidence that he acted in good faith. <u>Peck</u>, 317 F.3d at 757; <u>Koerth</u>, 312 F.3d at 868. To rebut this presumption, the defendant may show that (1) the magistrate issued the warrant in reliance on a deliberately or recklessly false warrant application; (2) the magistrate wholly abandoned her neutral, detached judicial role and simply rubber-stamped the warrant application; or (3) the warrant was based on an application so lacking in indicia of probable cause that no reasonable officer could have relied on it. See <u>Leon</u>, 468 U.S. at 923; <u>Peck</u>, 317 F.3d at 757; <u>Koerth</u>, 312 F.3d at 868.

**B.  Analysis**

The instant warrant application was sufficient to establish probable cause. Beard, the citizen-witness who identified the shooting suspect as James Mayes, personally observed the events she related and provided a detailed statement to the police on the same date. She provided a description of the vehicle the suspect drove, as well as the car behind which he parked; she described the circumstances of their interaction previously that day and just prior to the shooting; she described how the appearance of the two men across the street agitated the suspect, causing him to retrieve a firearm; and she described how, after the shooting, he got back into the Breeze and sped off. Beard further indicated that she knew the suspect from her work as "James" and was able to obtain his last name, Mayes, by calling her supervisor.

5

While Yde was unable to personally vouch for Beard's credibility based on prior experiences with her, Beard's status as a citizen-witness (who so far as the record shows had nothing to gain by fingering defendant) supports her credibility. See, e.g., United States v. Blount, 123 F.3d 831, 835 (5th Cir. 1997) (noting that citizen informants, identified bystanders, and crime scene witnesses "may generally be presumed credible by police in a way that professional informants are not"); Edwards v. Cabrera, 58 F.3d 290, 294 (7th Cir. 1995) (noting that a citizen informant is inherently more reliable than the usual police informants who are themselves often mired in criminal activity); United States v. Decoteau, 932 F.2d 1205, 1207 (7th Cir. 1991) (stating that "if it seems reasonable to the police to believe that the eyewitness was telling the truth, they need not take any additional steps to corroborate the information regarding the crime before taking action"); 2 Wayne R. LaFave, Search and Seizure § 3.4(a) (4th ed. 2004) (noting that the prevailing view is that corroboration is not essential when an average citizen reports a crime based on her personal observations, and that in such cases reliability may generally be presumed). The fact that Beard did not personally appear before the issuing judge does not, under these circumstances, diminish her credibility.

Further, the police partially corroborated Beard's information and conducted an independent investigation before applying for the warrant. For instance, officers found shell casings on 12th Street, substantiating Beard's statement about shots being fired. Officers also spoke to Delacruz, confirming that Mayes lived on Ohio Street. Yde researched Mayes's background, learning from police department records that he had recently been stopped in a 1983 Olds that listed to James Mayes at 26 Ohio Street. On September 15, Yde traveled to 26 Ohio Street and saw a Plymouth Breeze matching the description Beard provided parked outside. He ran the plate on the Breeze, which listed to a woman living at an address Mayes

6

previously provided to police.  Three days later, another investigator again saw the Breeze parked outside 26 Ohio Street.  Yde also ran Mayes's record and learned that he was a felon. He further learned that Mayes had been convicted of murder in Memphis, Tennessee, which corroborated Beard's statement that Mayes had told her that he used to live in Memphis.

Defendant notes that the affidavit contains no corroboration of Beard's statement about the shooting from other witnesses in the area at the time.[1]  However, it is well-settled that reliable information from even one person may be sufficient to establish probable cause.[2]  See, e.g., Beauchamp v. City of Noblesville, 320 F.3d 733, 743 (7th Cir. 2003) ("The complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious, in which case the officer has a further duty to investigate."); Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 790 (3d Cir. 2000) (holding that the credible report of single witness was sufficient to establish probable cause to arrest, and rejecting the argument that the officer had to interview other witnesses).  Nothing in Beard's account of events would lead a reasonable officer to believe she was lying, and the discovery of shell casings in the area provided some corroboration for

---

[1] Beard stated that when the shooting started "everyone else around began to run." (R. 6-2 at 2 ¶ 5.)

[2] It is also well-settled that an officer may reasonably rely on information obtained from other officers in applying for a warrant.  See, e.g., United States v. Ventresca, 380 U.S. 102, 111 (1965) ("Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number."). Thus, the fact that Yde did not personally interview Beard on September 1, 2006, but rather relied on Funderburg's report, is insignificant.  (It appears that Yde did personally speak to Beard later in the investigation.  (R. 6-2 at 3 ¶ 9.)

7

her statement.[3]

Defendant further argues that the information about his prior conviction and alleged gang affiliation did not provide corroboration for Beard's statement that he was the person shooting the firearm. I agree that convicted felons and alleged gang members do not enjoy lesser Fourth Amendment protections than others, and that a record check alone does not corroborate an informant's allegation of criminal activity. See Peck, 317 F.3d at 757. However, defendant's argument again assumes that the statement of a credible eye witness is insufficient to establish probable cause.[4]

---

[3] Because the warrant must stand or fall based on the information within the four corners of the affidavit, defendant argues that it would be improper to speculate why other witnesses did not come forward or were not included in the affidavit, as the magistrate judge did. However, the pertinent point for present purposes is that nothing within the affidavit suggests that the officers should have doubted Beard, or that the absence of other witness should have raised red flags for the issuing judge. The issuing judge certainly could have assumed that the unknown others present at the scene either did not see the shooter, could not identify him or did not want to get involved. Nothing in the record suggests that Yde omitted such statements because they would have detracted from the showing of probable cause.

[4] It is also worth noting that Yde's discovery that defendant was a convicted felon made it unlawful for defendant to possess a gun at all, whether or not he fired it. Further, it appears that Yde may have included some of this information in order to justify his request for a no-knock warrant, which the judge approved. Defendant does not challenge the no-knock decision or the manner in which the warrant was executed. I also note that in his main brief before the magistrate judge (R. 6) defendant presented facts contrary to those contained in the warrant application (e.g., that he was released from prison in 2003, not 1991, and that the police report pertaining to the July 2006 stop of Delacruz does not mention James Mayes). As noted above, warrants must stand or fall based on the information within the application. Thus, these additional facts are not properly before me. (Defendant does not contend, based on such factual discrepancies, that Yde misled the issuing judge. See Franks v. Delaware, 438 U.S. 154 (1978).) Similarly, in his reply brief before the magistrate judge (R. 8), defendant noted that the 9 mm shell casings found at the scene of the shooting did not match the .38 revolver later found in his residence. Again, the propriety of a search warrant must be evaluated based on the information presented to the issuing judge, rather than later events. See, e.g., Harden v. Peck, 686 F. Supp. 1254, 1259 (N.D. Ill 1988) (stating that a "search warrant is not unlawful merely because the information upon which it is based is later determined to be inaccurate").

8

Defendant also contends that the information in the affidavit was stale. It is true that twenty days elapsed from the time of the alleged shooting to the application for the warrant. However, courts have held that such passage of time is not critical when the contraband sought to be recovered is unlikely to be consumed or dispersed, see, e.g., United States v. Harju, 466 F.3d 602, 608 (7th Cir. 2006) (noting that "only three weeks had elapsed since the gun had been seen in Mr. Harju's possession on his property, and, unlike small amounts of drugs or cash, the gun was not likely to have been sold (or consumed) during that period of time"), or when the alleged offense is ongoing, see, e.g., United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995) (noting that passage of time is less significant when the alleged offense is continuing, such as unlawful firearm possession); see also United States v. Pless, 982 F.2d 1118, 1126 (7th Cir. 1992) ("Passage of time is less critical when the affidavit refers to facts that indicate ongoing continuous criminal activity."). Further, officers saw the Breeze parked outside 26 Ohio Street on September 15 and 18, and applied for the warrant shortly thereafter on September 21.

It is also true that Beard did not see Mayes with the gun inside 26 Ohio Street, but this does not defeat probable cause. "Courts have acknowledged that individuals who own guns keep them at their homes." United States v. Smith, 182 F.3d 473, 480 (6th Cir. 1999); e.g., United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988) (collecting cases holding that it is reasonable to assume that individuals who have guns keep them in their homes); see also United States v. Anderson, 450 F.3d 294, 303 (7th Cir.), cert. denied, 127 S. Ct. 532 (2006) ("Probable cause does not require direct evidence linking a crime to a particular place. Instead, issuing judges are entitled to draw reasonable inferences about where evidence is likely to be found given the nature of the evidence and the type of offense.") (internal citation and quote

9

marks omitted).[5] And, as noted, officers saw the Breeze from which Mayes obtained the gun outside 26 Ohio Street within three days of the search warrant application.

Thus, for these reasons and those provided by the magistrate judge, I find that the warrant was supported by probable cause.[6]

### III.  CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 9) is **ADOPTED**, and the motion to suppress (R. 6) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 11th day of February, 2007.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

---

[5] Defendant notes that Yde averred that persons involved in criminal activity sometimes store guns in vehicles and out buildings, but did not state that guns are often stored in residences. However, the issuing judge could reasonably draw this common sense conclusion on his own.

[6] The magistrate judge found in the alternative that even if the warrant was deficient, the good faith doctrine applied. Because I find the warrant valid, I need not address good faith.

10